UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JUSTIN A. SCHOFIELD,<br><br>    Defendant. | Case No. 19-cr-40034-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Justin A. Schofield's *pro se* motions for a sentence reduction for "extraordinary and compelling reasons" pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)) (Docs. 141 & 144). Schofield also asks the Court for authorization to engage a medical expert under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, in connection with his motion (Doc. 145). The Government has responded to Schofield's motion for a reduction (Doc. 152). The defendant has not replied, although he was given an opportunity to do so.

**I.    Compassionate Release**

The First Step Act expanded the sentence reduction provisions[1] of § 3582(c)(1)(A) by opening the door for a defendant to move for a reduction rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The relevant portion of the law provides:

---

[1] The reduction provisions are often referred to as "compassionate release" because historically the grounds for reduction have included the defendant's health and/or age as "extraordinary and compelling reasons" for immediate release. Release was called "compassionate" because it was viewed as showing sympathy for an ailing or aged defendant.

>**(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>>(1) in any case—
>>>(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>>>(i) extraordinary and compelling reasons warrant such a reduction. . .
>>>
>>>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

In exhausting administrative remedies, the defendant must have asserted the same or similar issues as grounds for relief in his request to the warden as he does in his motion for a sentence reduction. *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). Otherwise, the warden is not equipped to properly consider the defendant's request. Additionally, the Court should give substantial weight to the BOP's analysis, if there is any, regarding "extraordinary and compelling reasons" in any particular case. *Gunn*, 980 F.3d 1180.

The final clause of § 3582(c)(1)(A) requires the Court to consider whether a sentence reduction would be consistent with U.S.S.G. § 1B1.13 (2023) (effective Nov. 1, 2023), the policy statement applicable to motions filed by the BOP Director or the defendant. That policy statement adds the provision that the defendant must not be a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(a)(2) (2023).[2] The policy statement further

---

[2] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

defines "extraordinary and compelling reasons" to include, alone or in combination, as relevant for this case:

>   **(1) Medical Circumstances of the Defendant.**—
>   **(A)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>   **(B)** The defendant is—
>   > **(i)** suffering from a serious physical or medical condition,
>   > **(ii)** suffering from a serious functional or cognitive impairment, or
>   > **(iii)** experiencing deteriorating physical or mental health because of the aging process,
>
>   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>   **(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>   **(D)** The defendant presents the following circumstances—
>   > **(i)** the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>   > **(ii)** due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>   > **(iii)** such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b) (2023).

The guideline further states that non-retroactive changes in the law may not be considered in determining whether an extraordinary and compelling reason exists, but it may be considered in determining the extent of a reduction where other extraordinary and compelling reasons exist U.S.S.G. § 1B1.13(c) (2023). The guideline also provides that the rehabilitation of the defendant cannot, by itself, be an extraordinary and compelling reason, but it may be considered in connection with other reasons in determining whether and to what extent the Court

should grant a reduction.  U.S.S.G. § 1B1.13(d) (2023).

Thus, for a defendant to be eligible for a § 3582(c)(1)(A) sentence reduction, he must have exhausted his administrative remedies,[3] and the Court must find that (1) extraordinary and compelling reasons for a reduction exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the extraordinary and compelling reasons warrant a reduction.  18 U.S.C. § 3582(c)(1)(A).  The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied that burden.  *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021); *Gunn*, 980 F.3d at 1180.  The Court must ensure that any reduction complies with U.S.S.G. § 1B1.13 (2023).

**II.     Analysis**

In October 2019, Schofield pled guilty to one count of conspiracy to distribute 50 grams or more of methamphetamine ice, four counts of distribution of a mixture or substance containing methamphetamine, and one count of possession with intent to distribute a mixture or substance containing methamphetamine.

At the defendant's sentencing in February 2020, the Court found Schofield's relevant conduct was 316.26 grams of methamphetamine ice.  It also found that Schofield was a career offender based on two prior convictions for drug crimes (unlawful possession of a methamphetamine precursor and unlawful possession with intent to deliver cannabis).  *See* U.S.S.G. §4B1.1.[4]  His career offender base offense level was 37 because of the statutory maximum sentence of life for the conspiracy count under 21 U.S.C. § 841(b)(1)(A).  *See* U.S.S.G. § 4B1.1(b)(1).  The Court sentenced Schofield to serve 262 months in prison on the

---

[3] The exhaustion requirement is not jurisdictional and may be waived by the Government.  *Gunn*, 980 F.3d at 1179.
[4] Unless otherwise noted, all references to the U.S.S.G. are to the 2018 version.

conspiracy count and 240 months in prison, the statutory maximum, on all other counts, all to run concurrently. Schofield did not appeal his sentence. In January 2023, the Court reduced his sentence to 174 months, and he is currently set for release in December 2032. *See* BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (visited Sept. 18, 2024).

In January 2024, Schofield asked the warden of his institution, the U.S. Medical Center for Federal Prisoners at Springfield, Missouri ("MCFP-Springfield") for compassionate release based on renal failure, diabetes, glaucoma, and a spot on his lungs (Doc. 152-1). The warden denied that request (Doc. 141 at 3). He determined that Schofield was not disabled or capable of only limited self-care and was able to live on an ambulatory unit without assistance with his activities of daily living. The warden also pointed to his poor institutional adjustment and his multiple incident reports while in prison.

Now, Schofield asks the Court for compassionate release in light of his serious health conditions that include a terminal illness with an end-of-life trajectory (end-stage renal disease, type 1 diabetes, toe infections, stints in both legs and more) that impedes his ability to provide self-care in prison and is not expected to get better. He notes that U.S.S.G. § 1B1.13 (b)(1)(A) (2023) lists end-stage organ disease as an example of a qualifying medical condition. He is housed at MCFP-Springfield, receives dialysis three times a week, takes several medications daily, consults with a kidney specialist monthly, and is regularly monitored by a physician's assistant. He admits that he had kidney disease when he was sentenced but states that it has gotten progressively worse in prison. He suggests he may be able to receive better medical care on his own outside of prison, and he seeks leave to retain an expert under the CJA to opine that he needs a kidney transplant. He points to his good behavior in prison and completion of multiple prison programs as evidence that he is no longer a danger to the public and is fit for

release.  Alternatively, he asks the Court to allow him to serve the remainder of his term on home confinement.

In response, the Government first notes that Schofield suffered from many of the same adverse health conditions, including kidney failure that required dialysis, when he committed his crimes and when the Court sentenced him in 2020.  The Court took those conditions into account when it sentenced him and when it later reduced his sentence.  The Government argues that, although Schofield has a serious health condition that may amount to an extraordinary and compelling reason for release, the medical staff at MCFP-Springfield is caring for him as well as possible given Schofield's non-compliance with numerous medical requests (such as, for example, blood pressure checks, blood glucose checks, insulin doses, and dietary choices).  Citing the warden's response to Schofield's request for release, the Government argues that Schofield's conditions have not rendered him unable to care for himself.  The Government further opines that Schofield is still a danger to the community and that the § 3553(a) factors weigh against release.  It points to his long criminal history before he was imprisoned and his numerous disciplinary infractions after imprisonment, which the warden classified as poor institutional adjustment.

As a preliminary matter, the Court addresses Schofield's request for appointment under the CJA, 18 U.S.C. § 3006A(e), of an expert on treating kidney disease in the correctional setting.  That provision of the CJA simply does not apply to Schofield's request.  The CJA provides that *counsel* for an indigent person may request expert services necessary for adequate representation, and the Court may authorize *counsel* to obtain those services.  18 U.S.C. § 3006A(e)(1).  Here, Schofield makes the request *pro se*, which the CJA does not contemplate.

Additionally, even if Schofield could make a *pro se* motion under the CJA, the Court

would deny it.  The Court may approve a request for expert service where "the services are necessary." 18 U.S.C. § 3006A(e)(1).  Here, the Court's understanding of end-stage kidney disease in a correctional setting is not the basis for its decision on the motion.  The expert Schofield requests is not necessary to decide this motion.

      As for exhaustion of administrative remedies, the Government has not invoked exhaustion as a defense, so has waived that argument.  Indeed, it appears that the defendant has satisfied his obligation to exhaust his administrative remedies before filing his motion.  In January 2024, the defendant asked the warden to move on his behalf for compassionate release, and he waited 30 days after making that request to file his current motion in July 2024.

      Turning to whether Schofield has presented extraordinary and compelling reasons for release, it is clear that he suffers from a terminal illness—end-stage kidney disease.  End-stage organ disease is listed as an example of a terminal illness in U.S.S.G. § 1B1.13(b)(1)(A) (2023).  Whether a defendant is diminished in his ability to care for himself is not relevant to whether his medical condition qualifies under U.S.S.G. § 1B1.13(b)(1)(A) (2023).  *Compare* U.S.S.G. § 1B1.13(b)(1)(B) (2023) (requiring that the defendant's health condition "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility. . . .").  Even independent of U.S.S.G. § 1B1.13(b)(1)(A) (2023), the Court would find that end-stage kidney disease qualifies under 18 U.S.C. § 3582(c)(1)(A)(i) as an extraordinary and compelling reason for release.

      However, Schofield presents too great a danger to the community to release now, and he needs to serve more of his sentence to achieve the purposes of sentencing.  The Court's analysis of the § 3553(a) factors at the sentencing hearing continues to apply now.  At that point, the Court considered the same health conditions Schofield has now, although possibly not as bad as

they are now.  As the Court noted at his sentencing, he was able to commit his criminal offenses even in his fragile health condition.  Schofield was a career offender with a history of disregard for the rules.

Nothing has materially changed since Schofield's sentencing with respect to the § 3553(a) factors.  Although he may have participated in some prison rehabilitation programs, his prison record of numerous serious disciplinary infractions and the warden's "poor institutional adjustment" assessment show that he has not changed his rule-breaking ways since he has been incarcerated.  He appears unable to conform to accepted behavioral expectations.  Additionally, his non-compliance with recommended medical care displays a lack of respect for authority that does not bode well for a peaceful life outside prison.  It also shows he is not ready to take care of himself, much less live in an interdependent community environment.  At this point, Schofield is still a danger to the community.  He needs to serve more of his sentence to protect the public from his further crimes and to achieve the other purposes of sentencing.  Anything less would undermine the gravity of his offense and would not promote respect for the law.

Schofield also asks the Court, as an alternative, to order him placed on home confinement.  The Court does not have jurisdiction to entertain such a request.  "After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence." *United States v. Wilson*, 503 U.S. 329, 335 (1992).  The BOP then has "plenary control" over placement of the inmate, subject only to statutory limits.  *Tapia v. United States*, 564 U.S. 319, 331 (2011); *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021).  This includes the decision whether to house an inmate in a prison or in home confinement, 18 U.S.C. § 3624(c)(2), and the Court has no jurisdiction to review that decision,

18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."). *Saunders*, 986 F.3d at 1078 (noting that a court lacks authority to change an inmate's place of imprisonment, although it may recommend a different placement). The defendant may seek relief from the BOP by filing an administrative remedy, but the Court cannot help him.

### III.    Conclusion

For all of these reasons, the Court **DENIES** Schofield's motions for a § 3582(c)(1)(A) sentence reduction (Docs. 141 & 144) and **DENIES** his motion for CJA authorization to hire an expert (Doc. 145).

**IT IS SO ORDERED.**
**DATED:  September 19, 2024**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**